570, 5 South. 111; *Brooks v. Barkley,* 72 Miss. 320, 18 South. 419; *Croes v. Pigg,* 73 Miss. 286, 19 South. 235; *Porter v. Staten,* 64 Miss. 421, 1 South. 487.

Argued orally by *Clem. V. Ratcliff,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

It was fatal error to give a charge that the jury could only find for the appellants, the plaintiffs below, to the extent of $15, the amount of attorney's fee. Whether the landlord's lien had been waived by Mrs. Holden should have gone to the jury on the testimony in the case, and, as involved in this, the right of the plaintiffs to recover the value of the seven hundred forty-six pounds of lint cotton which the appellee admitted it had. We concur with the learned court below that, on the testimony in the record now before us, the plaintiffs were not entitled to recover any more than the $15 attorney's fee and the value of the said seven hundred forty-six pounds of lint cotton, with interest thereon; but the charge given was, in effect, a peremptory charge to find for the defendants as to the value of this lint cotton.

Wherefore the judgment is reversed and the cause remanded.

*Reversed.*

---

WALTER CASEY v. STATE OF MISSISSIPPI.

[50 South. 978.]

CRIMINAL LAW AND PROCEDURE. *Murder. Electric methods not conducive to fair trials.*

Where a witness for defendant in a murder case was so unnerved, hysterical and affected by opiates as to be unable to testify, an application for a postponement of the hearing for a reasonable time should be granted to enable defendant to procure her testimony, although the postponement would carry the case over from a Saturday to the following Monday.

FROM the circuit court of, second district, Bolivar county. HON. JAMES M. CASHIN, Judge.

Casey, appellant, a negro, was indicted and tried for the murder of one Washington, was convicted and sentenced to suffer death, and appealed to the supreme court.

Appellant was indicted on Tuesday, the second day of the term. He had retained counsel in his behalf, but on Friday of the same week they withdrew from the case, and the court immediately appointed other counsel to represent him. Defendant's appointed counsel had his witnesses called, subpœnas having previously been issued for them, and *alias* subpœnas were issued at their request for two of the witnesses who were found to be absent. On the next day, Saturday, the case was called for trial. The two witnesses not having appeared, a *capias* for them was placed in the hands of the sheriff, who found one of them, a negro woman, at home in bed, claiming to be ill. Not heeding her remonstrances, the sheriff forced her to leave her home and attend the trial. When she reached the courthouse she was unnerved, hysterical and unable to testify. A physician treated her, administering an opiate and she was carried to the jail. The appellant's counsel moved for a postponement of the trial of the case, at least, until the following Monday, because the witness, by reason of her condition resulting from illness and the drug administered, was unable to testify. The motion was overruled and appellant was forced into a trial.

*Flowers, Fletcher & Whitfield,* for appellant.

The record discloses that the eye-witesses of the homicide who testified for the state were extremely partisan in their views, and biased against appellant. Aside from appellant himself he had no eye-witness of the killing on the stand as witness in his behalf. Hence, when he sought to have the negro woman, who had been brought in under *capias,* placed on the stand as a witness, and she was physically unable to testify, his rights were prejudiced. He had no fair trial. She was present at the homi-

cide. Appellant relied on her testimony. In jeopardy, he had been diligent and had had her subpoenaed. It was apparent when she was brought into court by the vigilant sheriff that she was shaking with a very bad chill. Sick and frightened and hysterical as she was, it did not much improve her capacity for testifying when the physician injected a large dose of some opiate into her, and the sheriff escorted her over to jail for safe-keeping as a witness. Counsel for appellant wisely insisted that she was unable properly to testify, and asked for the case to be passed at lease until the ensuing Monday. Why the learned court should so have erred as to refuse this humane request, we cannot tell. But the refusal was error. The witness could not and did not testify. For this the judgment must be reversed. *Woodward v. State,* 89 Miss. 348; *Montgomery v. State,* 85 Miss. 330; *Caldwell v. State,* 85 Miss. 383; *Watson v. State,* 81 Miss. 700.

*George Butler,* assistant attorney-general, for appellee.

It is questionable whether there was any prejudicial error in appellant's failure to secure the testimony of the negro woman as a witness in his behalf. Other eye-witnesses had testified in the matter. True they were state's witnesses. But it is shown of record, in the testimony taken on motion for a new trial, that the counsel who had first been retained by appellant and who had withdrawn from the case before the trial, had interrogated the negro woman about her knowledge of the matter and she had told them that she knew absolutely nothing about the homicide.

Argued orally by *R. V. Fletcher* for appellant, and by *George Butler,* assistant attorney-general, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

Undoubtedly, under the showing made in the record, this case, involving the life of the appellant, should have been postponed until Monday from late Saturday afternoon.

*Reversed and remanded.*